39 C.C.P.A. (Patents)

**Application of TAYLOR.**

**Patent Appeals No. 5839.**

United States Court of Customs and Patent Appeals.

Dec. 19, 1951.

Marvin J. Reynolds and Adolph A. Thomas, New York City (Ralph B. Stewart, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before JACKSON, Acting Chief Judge, and O'CONNELL, JOHNSON, and WORLEY, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claim 28 in an application for a patent, serial No. 618,429, filed September 25, 1945, "for inductance coils." Seven claims were allowed.

The rejection was made on the ground that the appealed claim is readable on a non-elected species and that there is no allowable generic claim covering that species. No prior art is relied upon.

The rejected claim reads as follows: "28. An inductance coil having a magnetic core contained within a closed copper shield and held substantially midway thereof, said shield comprising a cup-shaped part with an integral base and a cover secured over the other end of the cup."

Fig. 3 of the application depicts the elected species, and Fig. 12 the non-elected species to which claim 28 is drawn. In the interest of clarity those figures are here reproduced.

FIG. 3

FIG. 12

The substance of the invention may be understood from allowed claim 60, reading as follows: "60. A shielded inductance coil for audio frequency operation comprising a cylindrical magnetic core enclosing a winding, a shield for said coil in the form of a copper tube fitting around said core as closely as commercial tolerances permit to provide a cylindrical coil structure of minimum diameter, the thickness of said tube being of the order of 40 to 90 mils to form a short-circuited conductor of negligible resistance for eddy currents induced by said winding, the coil loss due to the close proximity of the tube to the magnetic core being substantially reduced with increase of shield thickness within the specified limits, and means for binding said tube and core into a unitary structure."

The correctness of the rejection of claim 28 depends upon whether allowed claim 60 is properly readable upon the non-elected species of Fig. 12 to which claim 28 is drawn.

It is to be noted that claim 60 refers to "a shield for said coil in the form of a copper tube." The term "tube" refers to reference number 22 of Fig. 3. That claim is clearly readable on the elected species as represented by Fig. 3.

It should likewise be noted that in claim 28 the following language is used: " * * * said shield comprising a *cup-shaped part* with an integral base and a cover secured over the other end of the cup." (Italics ours.) The quoted portion of the claim refers to reference number 58 of Fig. 12. Claim 28 is, therefore, clearly restricted to the non-elected species depicted in Fig. 12.

Counsel for appellant contend that since claim 60 was allowed, claim 28 should also have been allowed because, in their opinion, the language of claim 60 is broad enough to be readable on Fig. 12 and claim 60 is, therefore, an allowable generic claim. In support of their contention, counsel argue that claims in a pending application must be given the broadest reasonable interpretation and that unexpressed limitations will not be read into them; that terms in a claim are considered to be used in their ordinary meaning; and that the use of different names for similar devices that perform the same function in the same way is immaterial.

The Solicitor for the Patent Office properly agrees with those principles of law but denies their applicability to the facts herein involved.

Counsel for appellant assert that, so far as the facts of this case are concerned, the cup-shaped member 58 is essentially a tube within the generic language of allowed claim 60.

That contention necessarily means that the shield 58 of Fig. 12, described in claim 28 as a "cup-shaped part with an integral base," must be construed to be a "tube" within the ordinary meaning of that term. The sole point for determination here, therefore, is whether such contention is correct.

The board, in denying a petition for reconsideration stated as follows: " * * * While it is true that the shielding member 58 of Figure 12 includes a tubular portion, when this member is considered in its entirety, it is not a tube but is rather of cup-shaped form *and is so described in the specification.* * * *" (Italics ours.)

We are in agreement with the reasoning of the board that "cup-shaped part" 58, considered in its entirety, is not a "tube." Nor do we think that the term "tube" includes a "cup-shaped part with an integral base" within the scope of its ordinary meaning.

There are various *kinds* of tubes but nowhere have we been able to find any similarity between "tube," in either a generic or specific sense, and the term "cup-shaped." The dictionaries are all to the same effect as may be illustrated by the following definition of the word "tube":

Webster's New International Dictionary, Second Edition, 1949:
"tube, n. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; as, a fire *tube;* a water *tube;* a condenser *tube* * * * the *tubes* of a tubular bridge; a friction *tube;* the *tube* of a musical instrument; bronchial *tube;* a priming *tube,* etc.

"Any similar hollow conduit, often oval, square or polygonal in section."

While a cup-shaped structure may contain a tubular or cylindrical portion, we cannot understand in what manner the term "tube" in claim 60 may properly be considered to encompass, within its ordinary meaning, the "cup-shaped part with an integral base" of claim 28 and shown in Fig. 12. As argued by counsel for appellant, terms in a claim should be considered to be used in their ordinary meaning. In our opinion, the use of the terms in issue, in the manner proposed by appellant, involves an unreasonably strained interpretation of their ordinary meaning. To permit such use would be to ignore the very rules of law which appellant avers are governing in this case.

We find no error in the holding of the Board of Appeals and its decision is accordingly affirmed.

Affirmed.

GARRETT, Chief Judge, did not participate in the consideration or decision of this case.